# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| GAYLE T. MOORE, ) | CIVIL ACTION NO.: 4:04-22617-TLW-TER |
| ) | |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

The plaintiff, Gayle T. Moore, filed applications for Supplemental Security Income (SSI) on March 27, 2002, alleging inability to work since February 18, 2000 (Tr. 52), due to Crohn's disease, cervical cancer and hip problems (Tr. 73). Her applications were denied at all administrative levels (Tr. 12-14), and upon reconsideration (Tr. 36). The Administrative Law Judge (ALJ) issued an unfavorable decision on December 12, 2003, finding plaintiff was not disabled because she could

perform sedentary, unskilled work that does not require crawling, crouching, climbing, squatting or kneeling (Tr. 15-22). Because the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-8), that decision became the final decision of the Commissioner for purposes of judicial review. Plaintiff sought judicial review in a complaint filed on October 15, 2004, pursuant to section 205(g) of the Act. See 42 U.S.C. §405(g); 20 C.F.R. § 416.1481 (2004).

On April 14, 2005, plaintiff also filed a Motion for Remand under sentence six of 42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND

The plaintiff, Gayle T. Moore, was born on September 22, 1968 (Tr.52), and was 35 years old as of the date of Commissioner's final decision. Plaintiff became disabled due to Chrohn's disease, cervical cancer and hip problems (Tr. 73). Plaintiff has a high school education (Tr. 79) and past work experience as a packer in a plant, sewing machine operator and a sales person in a tobacco warehouse (Tr. 74).

## III. DISABILITY ANALYSIS

In the decision of December 12, 2003, the ALJ found the following:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

3. These medically determinable impairments do not meet or

        medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.     The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5.     The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment (20 CFR §§ 404.1527 and 416.927).

6.     The claimant has the residual functional capacity for sedentary, unskilled work that does not require crawling, crouching, climbing, squatting or kneeling. Additionally, it should not require the use of the lower extremities for pushing or pulling. Further, she may be allowed to stand and periodically stretch.

7.     The claimant is unable to perform any of his past relevant work (20 CFR §§ 416.965)

8.     The claimant is a "younger individual" (20 CFR §§ 416.963).

9.     The claimant has a high school equivalent education (20 CFR §§ 416.964).

10.     Transferable of skills is not an issue in this case (20 CFR §§ 416.968).

11.     The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR§ 416.967).

12.     Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a bench worker with 800,000 jobs existing in the national economy and surveillance system monitor with 105,000 jobs existing in the national economy.

13.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this

decision (20 CFR §§ 416.920).

## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. The medical records as set out by the defendant have not been disputed by the plaintiff. Therefore, the undisputed medical evidence as stated by the defendant is set forth herein, in part.

Plaintiff had a history of treatment for symptoms of Crohn's disease since November of 1995 (Tr. 107-15). The treatment notes of T. Bright Williamson, M.D., dated between December 20, 1995, and July 18, 1996, indicated that medications controlled Plaintiff's Crohn's disease and she was doing well (Tr. 107-13, 140).

Plaintiff also had a history of treatment for complaints of left hip and knee pain from February to March of 2000 (Tr. 144-47). A pelvic x-ray on February 21, 2000, showed hip joint space narrowing indicative of arthritis associated with Crohn's disease, but knee x-rays were normal (Tr. 146-47). Plaintiff received a prescription for Vioxx[1] (Tr. 146). On March 20, 2000, Plaintiff reported to George Dawson, M.D., that Vioxx relieved her left hip and knee pain (Tr.145).

On March 24, 2000, Plaintiff presented to the Carolinas Hospital System complaining of right lower extremity swelling (Tr. 134). Raymond K. Allan, M.D., found right lower extremity swelling, but normal neurological functioning (Tr. 135). He diagnosed deep venous thrombosis, history of Crohn's disease and past anemia, and admitted Plaintiff to the hospital for medication and supportive

---

[1]Non-narcotic analgesic for the treatment of moderate to severe pain associated with arthritis and osteoarthritis. See Mosby's Drug Consult, (Mosby's), (15th ed. 2005).

care (Tr. 135). On March 27, 2000, Dr. Allen noted that Plaintiff's Crohn's disease was not active, and discharged her with prescriptions for Coumadin and iron (Tr. 131-32).

Plaintiff presented again to Dr. Allen for follow-up visits on March 28 and 29, 2000, where he instructed Plaintiff to continue taking Coumadin, and prescribed Vioxx (Tr. 127, 130). When Plaintiff saw Dr. Allen on March 31, 2000, he noted that she was "doing well" (Tr. 127). On September 7, 2000, Plaintiff presented to Dr. Allen with complaints of reduced appetite and general body pain (Tr. 123). He noted a weight loss of eight pounds, and diagnosed abdominal pain secondary to Crohn's disease, and a history of deep vein thrombosis, and prescribed medications (Tr. 123).

On March 15, 2001, a pap smear indicated squamous cell abnormality and low grade intraepithelial lesion (Tr. 156). In a surgical pathology report on April 20, 2001, Dennison B. Robey, M.D., diagnosed endocervical curettings, and acute and chronic endocervicitis (Tr. 162).

On April 11, 2002, Plaintiff told Dr. Allen that she was vomiting and her bowels were not moving (Tr. 123). Dr. Allen assessed abdominal pain and history of Crohn's disease, and ordered x-rays and laboratory testing (Tr. 123). On April 12, 2002, an abdominal x-ray indicated a mild ileus pattern (Tr. 119).

On April 17, 2002, a gynecological examination was normal (Tr. 148-49). On May 8, 2002, a pap smear indicated glandular cell abnormality, but normal squamous cells (Tr. 150).

An August 29, 2002, a hip x-ray showed advanced left hip osteoarthritis (Tr. 117, 166). On this same day, Dr. Allen performed a consultative examination (Tr. 163-65). Plaintiff reported that she did not take medications for her Crohn's disease at that time (Tr. 163). She also complained of abdominal pain when she wore tight clothing, and difficulties playing with her children and lifting

5

clothing and groceries (Tr. 163). Plaintiff complained of left hip pain, and inability to walk long distances or stand for extended periods (Tr. 163). She also alleged difficulties in turning her neck from side to side (Tr. 163). Dr. Allen found that Plaintiff had decreased neck and left hip ranges of motion (Tr. 164). He also found good bilateral knee ranges motion (Tr. 164). Plaintiff could grasp and manipulate well with either hand, was ambulatory, could get on and off of the examination table without difficulty, and was neurologically intact(Tr. 164). Dr. Allen diagnosed Crohn's disease, left hip pain, and degenerative joint disease(Tr. 165).

On February 6, 2003, Arthur Wilkoszewski, M.D., conducted a consultative examination(Tr. 179-81). Plaintiff complained of 10 to 15 watery bowel movements per day, arthritic changes in her cervical and lumbar spine, and difficulty walking and standing due to her left hip arthritis (Tr. 179-80). Dr. Wilkoszewski found that Plaintiff had limited neck ranges of motion, joint erythema and swelling, limited left hip range of motion, and difficulties squatting, and getting on and off the examination table (Tr. 180-81). Dr. Wilkoszewski found no focal, sensory, or motor deficits, and normal reflexes (Tr. 181). Dr. Wilkoszewski diagnosed chronic diarrhea and abdominal pain secondary to Crohn's disease, severe left hip arthritis and neck pain with limited cervical ranges of motion and anemia, but noted that some of Plaintiff's symptoms could be alleviated with medical treatment (Tr. 181).

On June 5, 2003, Plaintiff presented to Sarah Smith, M.D., for a gynecological examination after abnormal pap smear results (Tr. 201). Dr. Smith conducted a colposcopy, which showed cervical lesions (Tr. 201). Dr. Smith diagnosed high-grade squamous intraepithelial lesion, and Crohn's disease (Tr. 201). On June 24, 2003, Dr. Smith diagnosed cervical intraepithelial neoplasia,

6

and recommended a loop electrode excision procedure[2]. (Tr. 202).

On October 8, 2003, Dr. Wilkoszewski completed a residual functional capacity questionnaire, where he diagnosed chronic diarrhea with abdominal pain, Crohn's disease, and left hip arthritis, and stated that Plaintiff's prognosis was poor (Tr. 205). He stated that Plaintiff's symptoms included weight loss, loss of appetite, arthritis, malaise, and fatigue(Tr. 205). However, he also stated that Plaintiff had no recent medications (Tr. 206). He said that Plaintiff's symptoms constantly interfered with attention and concentration, and she was incapable of even low stress jobs (Tr. 207). According to Dr. Wilkoszewski's questionnaire responses, Plaintiff could only sit, stand, and walk for less than two hours; and required a sit/stand option, and ready access to a bathroom (Tr. 207-08). He opined that Plaintiff could rarely lift less than 10 pounds, and twist, stoop, crouch, and climb stairs, but never climb ladders(Tr. 208).On this same day, Dr. Wilkoszewski also submitted a medical source statement, wherein he opined that Plaintiff could only lift less than 10 pounds occasionally, stand and walk for four to five hours in an eight hour workday, and never climb, balance, stoop, crouch, kneel, and crawl(Tr. 209-10). Additionally, Dr. Wilkoszewski stated that Plaintiff's ability to sit and push and pull were affected and that she should avoid heights, and moving machinery (Tr. 210-11).

## V. ANALYSIS

Plaintiff argues in her brief that additional reports that were material to her case were submitted to the Appeals Council who she alleges erred in not mentioning an evaluation of Listing

---

[2]A technique used for removing abnormal cervical tissue. See Taber's Cyclopedic Medical Dictionary, (Taber's) (20th ed.2005).

7

5.06B and 1.02A and why it would not apply to the claimant's condition as of the date of onset.

Subsequent to the hearing, plaintiff submitted additional reports from her treating physicians, Dr. Allen and Dr. Klett, as well as, duplicative records to support her argument as to why the ALJ's decision was incorrect. Dr. Klett's notes reveal that at MUSC, her most recent x-rays revealed bilateral symmetric sacroilitis consistent with her history of inflammatory bowel disease and severe degenerative changes within the left hip which may represent stage V avascular necrosis.(Tr. 224). The x-ray reports submitted also showed a loss of the normal cervical lordotic curve which may represent muscle spasm and her lumbar spine x-rays revealed minimal intervertebral disc space narrowing at L4-5 diagnosed as osteochondrosis. (Tr. 227-228). Dr. Allen noted that plaintiff suffers with Chrohn's disease since 1989, suffers from advanced osteoarthritis particularly in her left hip which is related to her Crohn's disease and has cervical spine and lumbar spine pains attributable to arthritis. In the ALJ's decision, he found the following "The undersigned rejects Dr. Wilkoszewski's opinion regarding the claimant's ability to sit for only 2 hours in an 8-hour workday. There is no indication in the record that the claimant had any impairment that would cause her any difficulty in sitting. " (Tr. 17). Further, the ALJ found that "the undersigned rejects Dr. Allen's opinion regarding the inability to perform any postural activities. There is no evidence in the record that the claimant had any difficulty bending or stooping." (Tr. 18). The Appeals Council did not address this report or why it would not have affected the ALJ's findings.

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, <u>Richardson</u>, 402 U.S. at 390. Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock,</u>

483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989.

When evidence not considered by the ALJ is submitted to the Appeals Council and is incorporated into the record, the reviewing court must consider this evidence in determining whether the Commissioner's decision is supported by substantial evidence. Hart v. Apfel, No. 98-2320. 1999 WL 365555, at *3 (4th Cir. June 7, 1999) [unpublished opinion]. However, in conducting its review, the District Court is to determine whether substantial evidence supports the Commissioner's decision, and in order to conduct such a review it is necessary to have some knowledge of the basis for that decision, especially when additional items of evidence were presented to the Appeals Council that the ALJ did not have before him. "A bald conclusion unsupported by reasoning or evidence, is generally of no use to a reviewing court." Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978)[published decision]. In the Jordan case, a coal miner was seeking benefits in a black lung disease claim. The claimant lost at the administrative hearing before the ALJ and appealed the decision to the administrative Appeals Council and submitted additional evidence. The Appeals Council stated only that the additional evidence had been considered and summarily affirmed the denial of benefits. The Fourth Circuit reversed the Appeals Council's decision in light of the inadequacy of the explanation given for rejection of the additional evidence submitted for its consideration. The Fourth Circuit stated:

> Several new items of medical evidence, not all of it favorable to Jordan, were submitted to this body . . . stating only that the additional evidence had been considered, the appeals council summarily affirmed the denial of benefits . . . Before we determine the substantiality of the evidence to support the administrative

9

> determination, we must first ascertain whether the Secretary has discharged his duty to consider all relevant evidence. A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court, except in the very rare instance when a case is so one-sided as to be obvious.  This case is not within the exception.  Moreover, conclusory administrative determination may conceal arbitrariness. To eliminate these problems, we held in Arnold v. Secretary, "that the Secretary, in determining an applicant's entitlement to black lung benefits, must consider all relevant evidence, including that accumulated after June 30, 1973, and must indicate explicitly that such evidence has been weighed and its weight."  567 F.2d at 259. We think the opinion of the appeals council, stating as it did only that the additional evidence had been considered, was plainly deficient under Arnold.  The November, 1975 x-ray and the second physician's report sufficiently supported the existence of a qualifying disability to require that the Secretary explain why they were not persuasive. We therefore reverse and remand the case to the district court for the purpose of returning it to the Secretary with directions to give this claim adequate consideration and to articulate his conclusions with respect thereto.

(Jordan, 582 F.2d at 1334-1336).

There is contrary authority on this issue. In the case of Hollar v. Commissioner of the Social Sec. Admin. 194 F.3d 1304 (4th Cir. (N.C.)1999) [unpublished decision], the plaintiff sought review from the Appeals Council after the ALJ reached his decision denying her benefits.  Hollar submitted additional evidence which the Appeals Council considered and found did not provide a basis for changing the ALJ's decision.  Plaintiff then appealed complaining that the Appeals Council failed to consider and make explicit findings concerning the evidence submitted in support of her claim after the ALJ's decision.  A panel of the Fourth Circuit held that "the regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision." The Fourth Circuit referred to the applicable CFR,  20 C.F.R. § 404.970(b) (1999), which does not mandate that the Appeals Council

10

give explicit reasons for its decision.

However, there has been a decision relevant to the issues in this case, Harmon v. Apfel, 103 F. Supp.2d 869 (D.S.C. 2000), by United States District Judge David C. Norton. In Harmon, the plaintiff sought judicial review of the Commissioner's decision and had submitted additional evidence to the Appeals Council not considered by the ALJ. The Appeals Council considered the additional evidence but found it did not suffice as a basis for changing the ALJ's decision without stating its reason for its conclusion.

Quoting from Judge Norton's decision in Harmon, supra,

> The court must attempt to steer its analytical ship between the twin perils of Scylla and Charybdis[3]. The court is caught between trying to provide meaningful judicial review of evidence not considered by the fact finder, while avoiding actually performing the task of weighing and resolving conflicts in the evidence, which is, of course, the function of the ALJ. Specifically, in this modern-day version of the classic Greek tale, Scylla represents any violation of the Fourth Circuit's rule that when evidence not considered by the ALJ is submitted to the Appeals council and is incorporated into the record, the reviewing court must also consider this evidence in determining whether the Commissioner's decision is supported by substantial evidence. See Wilkins v. Secretary, Dep't of Health and Human Sevs., 953 F.2d 93, 96 (4th Cir. 1991). By attempting to adhere to such a rule when the Appeals Council fails to articulate the reasons why the new, additional evidence does not suffice as a basis for changing the ALJ's decision, this court is drawn perilously close to Charybdis, which represents any violation of the Fourth Circuit's rule that the Commissioner must indicate explicitly the weight of all relevant evidence because it is not within the province of a reviewing

---

[3] In Homer's Odyssey, Odysseus and his men had to wage battle against monsters such as Scylla and Charybdis and overcome other apparently insurmountable obstacles during the course of their voyage. Scylla was a multi-headed female monster, personifying a dangerous rock on the Italian side of the Straits of Messina. Charybdis was a creature whose daily consumption of the sea created the whirlpool off the Northeastern coast of Sicily, in the Straits of Messina. Because these creatures lived opposite shores of a narrow strait, it was supposedly impossible to navigate away from one peril without falling prey to the other.

> court to determine the weight of the evidence. See <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). . . This court is not a soothsayer and cannot base its conclusion on surmise and conjecture as to the reasons the Commissioner disregarded the new, additional evidence presented to it. Unless the commissioner has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational. <u>Arnold v. Secretary of Health, Educ. & Welfare</u>, 567 F.2d 258, 259 (4th Cir. 1977).

Judge Norton held that, quoted verbatim:

> In summary, although the Appeals Council's decision whether to grant or deny review of an ALJ's decision may be discretionary as well as unreviewable, and the regulations do not require the Appeals Council to articulate a reason for its decision not to grant review, a reviewing court cannot discharge its statutory function of determining whether the findings of the Commissioner are supported by substantial evidence when the Appeals Council considered evidence that the ALJ did not have the opportunity to weigh, and rejected that new, additional evidence without specifying a reason for rejecting it or explicitly indicating the weight given to the evidence.

<u>Harmon</u> at 873.

Judge Norton addressed the <u>Hollar</u> decision, previously noted herein, which is contrary to his position, in his Order stating that "Because this court is not convinced by the Hollar panel's perfunctory analysis, the court declines to follow the unpublished opinion." <u>Id.</u> at 872. Judge Norton noted that "by definition, an unpublished opinion is not binding precedent. See U.S. Ct. of App. 4th Cir. Rule 36(c)." Judge Norton remanded the <u>Harmon</u> case, under a sentence four remand, to the Commissioner to articulate and state reasons for his assessment of the additional evidence presented by the plaintiff. Judge Norton concluded this was necessary so that the District Court could properly determine whether the Commissioner's decision is supported by substantial evidence.

The Appeals Council did not state its reasons for concluding that the additional evidence, Dr. Allen's report and Dr. Klett's medical records, failed to provide a basis for reversing the decision of the ALJ nor why they were not supportive of Dr. Wilkoszewski's opinion in his residual functional capacity questionnaire. The Appeals Council issued its decision stating a conclusion only. That procedure is arguably insufficient to enable a reviewing District Court "to discharge its statutory function of determining whether the findings of the Commissioner are supported by substantial evidence." Harmon, supra. As set forth, the Jordan decision, a published opinion, requires explicit findings by an Appeals Council in a black lung claim. The undersigned also notes that the Hollar decision (unpublished) and 20 C.F.R. § 404.970(b) does not require the Appeals Council to announce detailed reasons for its findings. However, in light of the Jordan decision and the analysis in Harmon, the undersigned finds Judge Norton's decision persuasive. Therefore, the undersigned recommends, based on the holdings in Harmon and Jordan, supra, as discussed above, that the plaintiff's case should be remanded under sentence four of 42 U.S.C. § 405(g) so that the Commissioner may indicate explicitly if the evidence was considered why the new, additional evidence does not suffice as a basis for changing the ALJ's decision. The Commissioner should consider the additional evidence and, if it finds that this additional evidence does not suffice as a basis for changing the ALJ's decision, the Order should explicitly indicate the reason. The District Court will then be in a position to determine whether or not the Commissioner's decision is supported by substantial evidence. As the undersigned is recommending a remand as set forth above, the specific arguments of the plaintiff will not be addressed at this time because the undersigned cannot address whether or not there was substantial evidence to support the decision of the ALJ and the Appeals Council.

13

## VI.  CONCLUSION

Based on the above, the undersigned RECOMMENDS that the Commissioner's decision be REMANDED PURSUANT TO SENTENCE FOUR for further administrative action as set out herein. It is FURTHER RECOMMENDED that plaintiff's motion to remand be deemed MOOT at this time.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

November 30, 2005

Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**
**&**
**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503
